Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7094 | **DATE** | 5/5/2004 |
| **CASE TITLE** | Eddie Latham vs. Residential Loan Centers of America, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Residential Loan Centers of America, Inc.'s motion to dismiss Counts I and III (18-1) is denied. Defendant Lake Shore Title Agency's motion to dismiss Count III (15-1) is denied. Defendant Provident Bank's motion to dismiss (19-1) is denied as to Counts I and II, but is granted as to Count III; Count III as to defendant Provident Bank is dismissed without prejudice. Plaintiff is given to 5/26/04 to amend his complaint. If plaintiff does not amend the complaint, Count III as to defendant Provident Bank will be dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 0 6 2004 | |
| | Notified counsel by telephone. | | date docketed | 46 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 5/5/04 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CW | courtroom deputy's initials | | cw mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EDDIE LATHAM, )
)
Plaintiff, )
)
v. ) No. 03 C 7094
) Paul E. Plunkett, Senior Judge
RESIDENTIAL LOAN CENTERS OF )
AMERICA, INC., PROVIDENT BANK, doing )
business as Provident Consumer Financial )
Services, LITTON LOAN SERVICING LP, )
LAKE SHORE TITLE AGENCY, a limited )
liability company, also known as Murray )
Title Agency, and DOES 1-5 )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Eddie Latham ("Latham") has sued defendants for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1 *et seq.* Defendants Residential Loan Centers of America, Inc. ("RLCA"), Provident Bank ("Provident") and Lakeshore Title Agency ("Lakeshore") have filed motions to dismiss the claims asserted against them pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, the motions are granted in part and denied in part.

## I. Facts

Latham is an Illinois resident, residing at a home he owns in Markham, Illinois. (Compl. ¶ 4.) Latham purchased his home in 1979. (*Id.*) Defendant RLCA is an Illinois corporation with offices in Des Plaines, Illinois. (*Id.* ¶ 5.) It is engaged in the business of originating mortgages, including many "subprime" mortgages.[1] (*Id.*) Defendant Provident is a bank with offices in Cincinnati, Ohio. (*Id.* ¶ 6.) Defendant Litton Loan Servicing LP ("Litton") is a limited partnership entity with its principal place of business in Houston, Texas.[2] (*Id.* ¶ 7.) Defendant Lakeshore, a title company, is a limited liability company with its principal place of business in Elk Grove Village, Illinois. (*Id.* ¶ 10.) It may also be known as Murray Title Agency. (*Id.*) There are persons or entities unknown to Latham (Does 1-5), who have or claim an interest in his loan. (*Id.* ¶ 11.)

On or about February 28, 2001, Latham obtained a $55,250 adjustable rate mortgage loan from RLCA, secured by his home ("Loan"). The Loan has an initial interest rate of 9.375% and a maximum interest rate of 16.375%. (*Id.* ¶ 12.) Latham used the Loan proceeds for personal, family or household purposes, namely, the payment of prior debts. (*Id.* ¶ 13.) The following documents were signed by Latham in connection with the Loan transaction: (1) a note; (2) a mortgage; (3) a HUD-1 settlement statement; (4) a TILA disclosure statement (disclosing an annual percentage rate of 10.537%); (5) an itemization of the amount financed; and (6) an "affirmation on non-cancellation" ("Election to Not Cancel")[3] (together, "Loan Documents"). (*Id.* ¶¶ 14, 18.)

---

[1] Subprime mortgages involve the extension of credit to higher-risk borrowers.

[2] Litton was dismissed from this case with prejudice on April 23, 2004.

[3] By signing the Election to Not Cancel at the closing, Latham certified that he "has not exercised [his] legal right to cancel the transaction within the time period permitted by law" and requests 'disbursement of the loan proceeds pursuant to the terms of the loan contract." (Compl. Ex. F.)

Lakeshore closed the Loan transaction; the closing occurred at Latham's home. (*Id.* ¶¶ 15, 16.) RLCA regularly uses Lakeshore to handle its closings. (*Id.* ¶ 24.) Lakeshore regularly closes loan transactions at the borrower's home. (*Id.* ¶ 17.) The Loan Documents were taken away after the closing, copied and sent to Latham at a later time. (*Id.* ¶19.) A check for the Loan proceeds was sent to Latham by courier service. (*Id.* ¶ 20.) RLCA eventually assigned the Loan to Provident. (*Id.* ¶ 26.)

Latham alleges that signing an Election to Not Cancel at the closing interferes with a borrower's right to cancel a loan transaction because the borrower signs the document, which states he is not exercising his right to cancel, at the same time he is notified of his right to cancel.[4] (*Id.* ¶ 21.) According to Latham, the only lawful way an Election to Not Cancel can be used is to have the closing agent or other person in possession of the loan proceeds meet with the borrower three business days after the closing, have the borrower execute the Election to Not Cancel and then deliver the loan proceeds. (*Id.* ¶ 22.)

Because the Loan was secured by Latham's home and not entered into for the purposes of the initial acquisition or construction of that home, Latham alleges the Loan was subject to the right to cancel under 15 U.S.C. § 1635 and 12 C.F.R. § 226.23.[5] (*Id.* ¶ 27.) Asking him to sign the Election to Not Cancel at the closing violated 15 U.S.C. § 1635 and 12 C.F.R. § 226.23. (*Id.* ¶ 28.) Latham notified RLCA and Provident of his election to rescind the Loan by letter dated August 20,

---

[4] Latham signed a Notice of Right to Cancel at the closing. (Compl. Ex. J.) The Notice of Right to Cancel described Latham's right to cancel the transaction within three business days of a certain date. Latham acknowledged receipt of this document and dated it February 28, 2001, the date of the closing. The Election to Not Cancel, also signed by Latham, is dated March 5, 2001, but Latham asserts that he signed it at the closing and post-dated it. (Compl. ¶ 18; Pl.'s Consol. Resp. at 2-3.)

[5] Section 226.23 sets forth a consumer's right to rescind certain credit transactions.

2003. He notified Litton by letter dated and August 27, 2003. (*Id.* Exs. H, I.) On August 26, 2003, RLCA, through its agent, sent a letter to Latham's attorney, stating that the Loan proceeds check was sent to Latham by overnight courier on March 5, 2001, and that Latham's demand for rescission was rejected. (*Id.* Ex. J, ¶ 31.) Latham has been instructed to send payments to Litton. (*Id.* ¶ 32.)

Latham has asserted a class claim against RLCA and Provident for violations of TILA ("Count I"), an individual claim against RLCA and Provident for violations of TILA ("Count II") and a class claim against RLCA, Lakeshore and other defendants for violations of the Consumer Fraud Act ("Count III").

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## Discussion

### I. Claims Against RLCA

A. Class Action TILA Claim

RLCA seeks to dismiss Count I on the basis that a TILA claim seeking rescission under section 1635 is not amenable to class action status. Specifically, RLCA asserts that "the need to inquire into factually-based allegations for each borrower makes a class action judicially,

procedurally, and financially improper." (RLCA Mot. to Dismiss at 5.) It argues that Latham cannot possibly satisfy the class action status requirements of Rule 23 because common issues of law and fact cannot predominate and therefore a class claim would be unmanageable. (*Id.* at 6.) Latham responds by saying that, because an objective standard determines whether the presentation of two conflicting documents (the Notice of Right to Cancel and the Election to Not Cancel) violates TILA, a class claim under 15 U.S.C. § 1635(b) is entirely appropriate. (Pl.'s Consol. Resp. at 7.)

Courts are divided on whether TILA claims for rescission are appropriate for class action treatment. *See Williams v. Empire Funding Corp.*, 183 F.R.D. 428, 435 n.10 (E.D. Pa. 1998) (listing cases in which courts have both denied and granted class action status for rescission remedy under TILA). In *Jefferson v. Security Pac. Fin. Servs., Inc.*, 161 F.R.D. 63 (N.D. Ill. 1995), Judge Castillo denied a motion for class certification because he found that "rescission is a purely personal remedy for technical violations of TILA." *Id.* at 68. Particularly relevant to his conclusion was the language in section 1635(b) itself, which gives a creditor twenty days to act on a borrower's request for rescission before the claim can be filed in court. He said: "This requirement cuts strongly in favor of treating rescission as a personal, rather than a class, remedy. Under Section 1635, individuals must choose to assert the right to rescind, on an individual basis and within individual time frames, before filing suit." *Id.* at 69. In concluding as he did, Judge Castillo relied in part on the decision in *James v. Home Constr. Co.*, 621 F.2d 727 (5th Cir. 1980), in which the court found the twenty-day cure period persuasive evidence that rescission is a personal remedy and that a rescission class cannot be certified.[6] *See James*, 621 F.2d at 731.

---

[6] The *James* court also relied on other arguments, such as: (1) the potential for conflict among parties seeking rescission from a credit institution of limited solvency; (2) the availability of attorney's fees in successful individual actions; and (3) the fact that the purpose of a rescission remedy is to restore the parties

Other courts have found that rescission claims under TILA could be maintained as class claims. In *Hickey v. Great W. Mortgage Corp.*, 158 F.R.D. 603 (N.D. Ill. 1994), Judge Conlon granted a motion to certify a class seeking damages and a declaration that the class had a right to rescind its transactions under TILA. *Id.* at 613-14. She gave little weight to the *James* court's argument that allowing a class action for rescission would conflict with the twenty-day cure period provided for in the statute. *Id.* at 613 n.5 (noting that some authority suggests that a written complaint can serve as notice to a creditor that a borrower seeks rescission). In *Williams*, the court found "nothing in the language of TILA which precludes the use of the class action mechanism provided by Rule 23 to obtain a judicial declaration whether an infirmity in the documents, common to all members of the class, entitles each member of the class individually to seek rescission." *Williams*, 183 F.R.D. at 436. It found significant the fact that plaintiff was not seeking to rescind each contract as a remedy. If the court found in plaintiff's favor on the TILA claim, then each class member, as an individual, would have the option to seek rescission and defendant would have the opportunity to exercise its rights to cure under TILA. *Id.* at 435.

The district court of Massachusetts rejected the reasoning of the *James* and *Jefferson* courts when it decided that class action status was available under TILA to seek a declaration of the right of rescission. *See McIntosh v. Irwin Bank & Trust Co.*, 215 F.R.D. 26, 33 (D. Mass. 2003). It was unpersuaded by the *Jefferson* court's rationale that class actions under TILA seeking rescission were "inappropriate because it would render section 1635 penal in nature." *Id.* at 33. The court said that to achieve its remedial purpose, TILA was penal in nature. It cited with approval the *Williams*

---

to the status quo ante. *James*, 621 F.2d at 730. The *Jefferson* also addressed these arguments. *See Jefferson*, 161 F.R.D. at 69.

-6-

decision and found that "the case for class certification is even stronger when ... plaintiffs seek only declaratory relief." *Id.*

With all due respect to the *Jefferson* court, we agree with the latter line of cases holding that a class claim under TILA seeking a declaration of the right to rescind can be maintained and disagree with RLCA's position that, as a matter of law, Latham's class claim is untenable. At this stage in the litigation, we do not find that Latham's claim requires such an individualized inquiry as to preclude the possibility of proceeding as a class.

We note that the majority of the cases discussed above addressed the availability of class status for a TILA rescission claim in the context of a Rule 23 motion for class certification. We do not certify a class at this time. Should Latham move to certify a class under Rule 23, Latham will need to satisfy all of the requirements of Rule 23 and certain of RLCA's arguments may then become more relevant. Questions regarding common issues of law and fact and other inquires related to class certification are better addressed at that time.[7] Additionally, we note that even if a class is certified, the class may be altered during the course of litigation. *See* Fed. R. Civ. P. 23(c)(1) (an order certifying a class can be altered before final judgment).

In the alternative, RLCA seeks to dismiss Count I on the basis that Latham has failed to state a claim upon which relief can be granted.[8] It argues that nothing in TILA or Regulation Z (the regulations promulgated by the Federal Reserve Board to implement TILA) prohibits the presentation of a post-dated Election to Not Cancel at the closing. (RLCA Mot. to Dismiss at 13.)

---

[7] The Seventh Circuit has instructed that issues of class certification should be addressed before deciding motions to dismiss under Rule 12(b)(6). *See Rutan v. Republican Party of Ill.*, 868 F.2d 943, 947 (7th Cir. 1989), *aff'd in part, rev'd in part on other grounds,* 497 U.S. 62 (1990).

[8] We note that RLCA has not moved to dismiss Count II of the complaint.

Latham argues that it is well established that TILA is violated if an Election to Not Cancel is presented at the closing with the Notice of Right to Cancel. (Pl.'s Consol. Resp. at 5.) While not agreeing with Latham's conclusion at this time, we do find that he has stated a claim under TILA.

A borrower's right to rescind the loan transaction must be "clearly and conspicuously disclose[d]." *Rodash v. AIB Mortgage Co.*, 16 F.3d 1142, 1146 (11th Cir. 1994) (citing 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(2)), *abrogated in part on other grounds, Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996). Latham has alleged that this right was interfered with by the simultaneous presentation at the closing of both the Notice of Right to Cancel and the Election to Not Cancel. (Compl. ¶¶ 18, 21.) In *Pulphus v. Sullivan*, 2003 WL 1964333 (N.D. Ill. Apr. 28, 2003), we found that plaintiff stated a claim for failure to provide notice of rescission rights under TILA when she alleged that, although her confirmation of election not to rescind was dated three business days after the closing, she was directed to sign it on the day of the closing. *Id.* at *15. We do not find that Latham's allegations differ significantly from those in *Pulphus*.[9] By providing for a three-day rescission period, which is unqualified and which can be waived only by the borrower under certain circumstances, *see* 12 C.F.R. § 226.23(e), Congress intended to give substantial protection to borrowers. *See Velazquez v. HomeAmerican Credit, Inc.*, 254 F. Supp. 2d 1043, 1044-46 (N.D. Ill. 2003). *See also* Craig Varga, *Finance Charges for Consumer Credit Under the Truth in Lending Act – A Report to the United States Congress*, 990 PLI/Corp 455 (May 1997) (noting three-day "cooling off" period extends to borrowers in order to review loan documentation, reassess

---

[9] In *Pulphus*, we cited to *Rodash* to support our decision that plaintiff had stated a claim under TILA. RLCA argues that *Rodash* is not good authority for the proposition that a post-dated Election to Not Cancel can support a claim for inadequate notice of rescission rights. It says that in *Smith v. Highland Bank*, 108 F.3d 1325 (11th Cir. 1997), *Rodash's* holding was limited to its facts. The *Smith* court did distinguish *Rodash* but still undertook an examination of the "circumstances of the transaction" to find that the mortgagee did not violate TILA's requirement of clear and conspicuous disclosure of the right to rescind. *See Smith*, 108 F.3d at 1327.

willingness to place home at risk and rescind if they wish for any reason). Given the eye with which we view a complaint in deciding a motion to dismiss under Rule 12(b)(6), we find that Latham has stated a claim under TILA for failure to provide clear and conspicuous notice of his right to rescind. *See Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 332 (7th Cir. 1999) ("[W]hen a lender informs a borrower of his right to rescind, but also contradicts this notice by telling the borrower that he had waived his right to rescind, the borrower may state a claim under [TILA].") (Manion, J., concurring in part and dissenting in part).

B. Class Action Consumer Fraud Act Claim

RLCA seeks to dismiss Count III on numerous grounds: (1) that a claim under the Consumer Fraud Act is not amenable to class action status; (2) that the complaint does not satisfy Rule 9(b); and (3) that it cannot be held liable for the actions of Lakeshore.

As to its first argument, RLCA repeats the argument it made with respect to the TILA class claim: that the fact-based inquiry necessary to determine whether, in each borrower's case, the Consumer Fraud Act was violated precludes class treatment. Latham responds by reasserting his TILA class claim position. As stated above, we do not determine at this stage of the litigation that Latham cannot maintain a Consumer Fraud Act class claim. His allegation is that the simultaneous presentation of both the Notice of Right to Cancel and Election to Not Cancel at the closing is deceptive. His complaint as drafted does not require an individualized examination of words and acts that took place at each closing to sustain his claim. We decline to dismiss his class action claim

at this time.[10] *See Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 664-666 (N.D. Ill. 1996) (allowing class claim under Consumer Fraud Act and common law fraud to be certified even though some individual issues may exist).

RLCA also argues that the Consumer Fraud Act claim should be dismissed because, under Illinois law, "where disclosures are governed by and comply with a federal statute, those disclosures do not violate the [Consumer Fraud Act]." (RLCA Mot. to Dismiss at 15.) We said above that Latham has stated a claim under TILA. It has not yet been determined that RLCA has complied with TILA. Its argument to dismiss based on this ground is premature.

Also unpersuasive is RLCA's argument that the Consumer Fraud Act claim has not been pled with the particularity required under Rule 9(b). To state a claim for a Consumer Fraud Act violation one must plead: "(1) a deceptive act or practice; (2) intent on ... defendant's part that ... plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce." *Lynch Ford, Inc. v. Ford Motor Co., Inc.*, 957 F. Supp. 142, 147-48 (N.D. Ill. 1997) (internal citations omitted). The allegation must be pled with the same particularity as required under common law fraud. *See Chaiken v. Fidelity & Guar. Life Ins. Co.*, 2003 U.S. Dist. Lexis 7262, at *9 (N.D. Ill. May 1, 2003). The Seventh Circuit has interpreted this to mean that a plaintiff must plead the facts relating to the "who, what, when, where, and how" of the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). All of these elements are found in the complaint.

The "who" are RLCA and Lakeshore. (Compl. ¶ 47.) The "what, when, where, and how" is the following: On February 28, 2001, in the course of closing the Loan at Latham's house, RLCA,

---

[10] Also as stated above, RLCA may reassert its position when Latham moves for class certification. At that time, it will be Latham's burden to prove the appropriateness of any class certification. *See Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976).

through Lakeshore, engaged in the deceptive act of providing Latham with a Notice of Right to Cancel and Election to Not Cancel simultaneously. (*Id.* ¶¶ 15, 16, 21, 47.) This was done in order to induce Latham to sign a note and mortgage. (*Id.* ¶ 48.) These allegations are sufficient to satisfy the requirements of Rule 9(b). *See Lachmund v. ADI Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) (noting that purpose of Rule 9(b) particularity requirement is to give party accused of fraud adequate notice of specific activity that plaintiff alleges constituted fraud).

RLCA's final argument, that it cannot be responsible under the Consumer Fraud Act for the acts of its agent, Lakeshore, is unavailing. Latham attempts to hold RLCA liable for Lakeshore's actions at the closing based on an agency theory. Latham's allegations of an agency relationship are not subject to the particularity requirements of Rule 9(b), but still they must satisfy Rule 8. *See Guaranty Residential Lending, Inc. v. International Mortgage Ctr., Inc.*, 2003 WL 23305801, at *4 (N.D. Ill. Jan. 21, 2004) (agency relationship establishing liability for fraud not generally required to be pled with particularity). There must be "some factual predicate . . . to create the inference of agency." *See Azimi v. Ford Motor Co.*, 977 F. Supp. 847, 851 (N.D. Ill. 1996) (internal quotation and citation omitted). Latham has alleged that "RLCA regularly used [Lakeshore] to handle its closings." (Compl. ¶ 24.) From this statement, one can infer that an agency relationship existed. *See Williams v. Ford Motor Co.*, 990 F. Supp. 551, 554-55 (N.D. Ill. 1997) ("An agency relationship exists when one 'undertakes to manage some affairs to be transacted for [and] . . . on account of the . . . principal.'") (quoting *Wargel v. First Nat'l Bank*, 460 N.E.2d 331, 334 (Ill. App. Ct. 1984)). Latham is asserting that RLCA participated in the fraud through its agent, Lakeshore. This is sufficient to state a claim against RLCA. *See Pulphus*, 2003 WL 1964333, at *21.

## II. Claims Against Provident

A. Class Action and Individual TILA Claims

Provident seeks to dismiss both TILA claims against it on the basis that the alleged TILA violations are not apparent on the face of the Loan documents. Under 15 U.S.C. § 1641(a), argues Provident, an assignee of a mortgage loan can be liable only if the violation is apparent on the face of the disclosure statement, which is not the case here. Latham argues, however, that section 1641(c), dealing the rescission, is an exception to the standard set forth in section 1641(a). We agree with Latham.

Section 1641(c) is titled "Right of rescission by consumer unaffected" and unequivocally states that assignees are not exempt from claims for rescission: "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c) (1998). The language could not be more clear that Latham can maintain a TILA rescission claim against Provident, an assignee. *See Pulphus*, 2003 WL 1964333, at *15-16.

Provident argues that even if it could be subject to a TILA claim for rescission, it cannot be liable to the class, especially for statutory damages, because the class, as set forth in Latham's complaint, is unrelated to Provident. It also asserts that the claim for damages is untimely.

We agree that Provident cannot be liable for damages. Section 1641 governs assignee liability under TILA. Section 1641(a) is titled "Prerequisites" and states:

> "Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action . . . is brought is apparent on the face of the disclosure statement . . . ."

-12-

15 U.S.C. § 1641(a) (1998). Because Latham's TILA claim is not dependent on a violation "apparent on the face of the disclosure statement," the only remedy available against Provident, as an assignee, is that of rescission, which is specifically provided for in section 1641(c) and which remains regardless of any limitation found in section 1641(a). *See Payton v. New Century Mortgage Corp.*, 2003 WL 22349118, at *6-7 (N.D. Ill. Oct. 14, 2003) (discussing assignee liability for statutory damages and also noting that section 1640 specifically refers to creditor (not assignee) liability for statutory damages unless otherwise provided for).[11] In so finding, we are in accord with the decisions of *Walker v. Gateway Fin. Corp.*, 286 F. Supp. 2d 965, 968-69 (N.D. Ill. 2003) and *Brodo v. Bankers Trust Co.*, 847 F. Supp. 353, 358-59 (E.D. Pa. 1994). Faced with the same issue, those courts reasoned that imposing damages on an assignee "would create an impermissible end run around the obvious congressional purposes that underlies the [s]ection 1641(a) enactment of a statutory equivalent to a bona fide purchaser rule." *Walker*, 286 F. Supp. at 696; *Brodo*, 847 F. Supp. at 359.

We are not persuaded, however, by Provident's argument that the class claim should be dismissed in its entirety because Latham is attempting to hold it liable to a class of unrelated borrowers. It refers us to Latham's class as set forth in his complaint, which is:

> "(a) all natural persons (b) who obtained loans from RLCA secured by their residences, (c) that were closed by [Lakeshore], (d) on or after a date three years prior to the filing of this action, (e) for purposes other than the initial construction or acquisition of those residences, (f) where a document in the form represented by Exhibit F (g) was signed at the closing."

---

[11] Because we find that Provident cannot be liable for statutory damages, we need not address its argument that Latham's claim for those damages is untimely.

(Compl. ¶ 38.) Provident says that the purported class has nothing to do with it. Latham argues, however, that the class is not unrelated to Provident. Latham seeks to make Provident liable for only the loans that were assigned to it and which otherwise meet the class definition. (Pl.'s Consol. Resp. at 10-11.)

We do not believe this issue is ripe for determination at this time. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-78 (7th Cir. 2001) (discussing different standard and judicial inquiry for Rule 12(b)(6) motion to dismiss and Rule 23 motion for class certification). Latham, as the putative class representative, has a claim against Provident as assignee of his loan. (Compl. ¶ 30; Ex. H). We have not yet certified a class, and until a class has been certified, we decline to engage in inquires related to standing or whether Provident is a proper defendant in a class claim.[12] *Cf. Payton v. County of Kane, et al.*, 308 F.3d 673, 677-78 (7th Cir. 2002) (noting that Supreme Court has said that issues of class certification should addressed before standing issue; suggesting class action should go forward at least until Rule 23 certification decision even where named plaintiffs have direct claim only against certain defendants; and noting possibility of certification of defendant class). Provident's motion to dismiss Latham's class claim (Count I) and his individual claim (Count II) is denied as to a potential rescission remedy.

B. Class Action Consumer Fraud Act Claim

Provident seeks to dismiss Latham's Consumer Fraud Act claim on the basis that, as an assignee, it cannot be liable under the statute. Latham responds, saying that, under Illinois law,

---

[12] We note that under Rule 23(b)(2), Latham must show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."

Provident takes the mortgage documents "subject to whatever infirmities the instruments had in the hands of the original obligee." (Pl.'s Consol. Resp. at 13.) We disagree with Latham's position on this issue.

The Illinois Supreme Court has stated that "knowingly receiving the benefits of another's fraud" is not actionable under the Consumer Fraud Act. *Zekman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853, 859 (Ill. 1998). In order for Provident to be liable under the statute, Latham must allege that it actually committed violations of the Consumer Fraud Act. *Pulphus*, 2003 WL 1964333, at *21. This he has not done. There is no allegation of any wrongdoing on the part of Provident; all of Latham's allegations with respect to this claim are directed at the "unfair and deceptive acts and practices" of RLCA and Lakeshore. (Compl. ¶¶ 47, 48, 49.)

Latham states that "[n]othing in *Zekman* . . . suggests that documents procured through statutory fraud in violation of [the Consumer Fraud Act] become non-fraudulent . . . upon transfer . . . or that such a transfer deprives the consumer of his or her rights." (Pl.'s Consol. Resp. at 15.) However, *Zekman*'s holding is quite broad and "there is nothing in [that] opinion that suggests mortgage assignees are exempt from its holding." *Pulphus*, 2003 WL 1964333, at *21.

We find that Latham has not stated a claim against Provident under the Consumer Fraud Act. Provident's motion to dismiss Count III is granted.

## III. Claim Against Lakeshore

A. Class Action Consumer Fraud Act Claim

Lakeshore seeks to dismiss the Consumer Fraud Act claim filed against it. It argues that a class action cannot be maintained (it adopts RLCA's arguments on this point) and that Latham has not stated a claim under the Consumer Fraud Act.[13]

We have already addressed the class action issue and need not repeat it here. We also find unavailing Lakeshore's argument that Latham has not stated a claim under the statute because he has not alleged that it engaged in any deceptive act or practice. As discussed above, Latham is alleging that the act of presenting both the Notice of Right to Cancel and Election to Not Cancel at the closing is deceptive. Latham also alleges that this act was done by Lakeshore at the closing that it coordinated and that the act was done to induce him to sign the Loan note and mortgage. (Compl. ¶ 48.) To argue that the Election to Not Cancel contains nothing deceptive on its face misses the point. (Lakeshore Mot. to Dismiss at 4.) The Consumer Fraud Act is aimed at "unfair or deceptive acts or practices." 815 ILCS 505/2 (1999). What type of activity falls within the ambit of those words is to be determined on a case by case basis. *People ex rel. Fahner v. Testa*, 445 N.E.2d 1249, 1251-52 (Ill. App. Ct. 1983) (words of statute "must be defined on a case by case basis because of the futility of trying to anticipate all the unfair methods and practices a fertile mind might devise") (citing *Scott v. Association for Childbirth at Home, Int'l*, 430 N.E.2d 1012, 1018 (Ill. 1981).

---

[13] It also suggests that the Consumer Fraud Act does not apply to real estate transactions and cites to *Maguire v. Holcomb*, 523 N.E.2d 688, 692 (Ill. App. Ct. 1988). In *Maguire*, the court noted an inconsistency in the language of the Consumer Fraud Act and questioned whether it applied to a real estate transaction. The court did not, however, reach the question as it found that the facts would not support a claim under the statute even if it did apply to real estate transactions. The Consumer Fraud Act does apply to mortgage lenders and is applicable in the context of loan and mortgage transactions, which is what this case involves. *See, e.g., Vargas v. Universal Mortgage Co.*, 2001 U.S. Dist. Lexis 6696 (N.D. Ill. May 18, 2001); *Bankier v. First Fed. Sav. & Loan Ass'n*, 588 N.E.2d 391 (Ill. App. Ct. 1992).

-16-

Lakeshore focuses too much on Latham's failure to allege coercion on Lakeshore's part during the Loan transaction. Latham is not required to plead coercion. In addition, Lakeshore's argument relating to Latham's reliance on any misrepresentations that it may have made is misplaced. *See Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001) (reliance not required to establish claim under Consumer Fraud Act).

Lakeshore also argues that Latham has not properly pled that Lakeshore's actions caused any injury. Latham's argument, however, is that Lakeshore's and RLCA's action "interfered with" his right to cancel. It is reasonable to assume his injury is being obligated under a mortgage that he wishes to rescind. (Compl. ¶¶ 29, 30, 31.)

## Conclusion

For the reasons stated above, defendants' motions are granted in part and denied in part. RLCA's motion to dismiss Counts I and III is denied. Lakeshore's motion to dismiss Count III is denied. Provident's motion to dismiss Counts I and II is denied; its motion to dismiss Count III is granted. Count III as to Provident is dismissed without prejudice. Latham has twenty-one days from the date of this Memorandum Opinion and Order to amend his complaint if he can do so and remain in compliance with Rule 11. If he does not amend his complaint within that period, that claim will be dismissed with prejudice.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT

DATED: **MAY - 5 2004**